# In the United States Court of Federal Claims

No. 19-1363
Filed: February 5, 2026
Reissued: March 2, 2026[†]

|  |  |
|---|---|
| **ANGELA HIATT,** | |
| *Petitioner*, | |
| **v.** | |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | |
| *Respondent*. | |

*Richard Gage*, Richard Gage, PC, Cheyenne, Wyoming, for Petitioner.

*Mary E. Holmes*, Trial Attorney, *Traci R. Patton*, Assistant Director, *Heather L. Pearlman*, Deputy Director, *Jonathan D. Guynn,* Acting Director, Torts Branch, Civil Division, *Brett A. Shumate*, Assistant Attorney General, U.S. Department of Justice, Washington, D.C., for Respondent.

## <u>MEMORANDUM OPINION AND ORDER</u>

**TAPP, Judge.**

In this vaccine case, Petitioner, Angela Hiatt ("Ms. Hiatt"), seeks reversal of the Special Master's decision denying her compensation claim. Ms. Hiatt alleged that a vaccination caused her to develop an autoimmune disorder and related neurological symptoms. The Special Master determined that she had not proven causation by a preponderance of the evidence and denied entitlement. Ms. Hiatt now moves for review. (Pet'r's Mot., ECF No. 89). Ms. Hiatt's core argument is that the Special Master invoked the preponderance standard in name only, while actually applying a more demanding burden. Despite these arguments, the record is devoid of legal error or an indication that the Special Master's fact-finding strayed into arbitrary-and-capricious territory. Accordingly, her Motion for Review is **DENIED**.

---

[†] This Opinion was originally filed under seal on February 5, 2026. (ECF No. 91). The Court provided parties the opportunity to review this opinion for any proprietary, confidential, or other protected information and submit proposed redactions no later than February 19, 2026. Contrary to the Court's direction, the parties neither proposed redactions nor indicated that they were waiving them. Thus, the sealed and public versions of this Opinion are identical, except for the publication date and this footnote.

## I.    Background

Ms. Hiatt received the tetanus, diphtheria, and acellular pertussis ("Tdap") and human papillomavirus ("HPV") vaccines on February 16, 2017, with no documented adverse reaction in the days immediately following. (Petition ("Pet.") at 1, ECF No. 1; Pet'r's Medical Records ("Pet'r's Ex."), ECF No. 6). Eleven days later, she sought medical care reporting chest and back pain, jaw discomfort, and upper-respiratory symptoms, which her providers attributed to non-cardiac and infectious causes rather than any post-vaccination process. (Pet'r's Ex. 5 at 95, ECF No. 6-5). Over the next several days, her symptoms evolved, and by March 1, she reported new weakness and numbness, along with a history of gastrointestinal illness that she had not mentioned during her earlier medical encounters. (Pet'r's Ex. 1 at 39–42, ECF No. 6-1). As her condition progressed, Ms. Hiatt was hospitalized with worsening weakness and sensory deficits, ultimately receiving a diagnosis of Guillain–Barré syndrome ("GBS") supported by absent reflexes and elevated cerebrospinal fluid protein.[1] (Pet'r's Ex. 9 at 26–27, 55, ECF No. 6-9). She required intensive care, intubation, intravenous immune globulin, and subsequent inpatient rehabilitation, gradually improving by April 2017 but continuing to experience residual symptoms. (*Id.* at 65). Ms. Hiatt initiated this action on September 6, 2019, alleging that the Tdap and HPV vaccines caused the persistent injuries for which she seeks compensation.[2] (Pet. at 2; Pet'r's Mot. for Review at 1–2).

The Special Master resolved Ms. Hiatt's case on the written record with no evidentiary hearing.[3] (Entitlement Decision at 1 ("I determined that this matter could be fairly resolved via ruling on the record, and both sides filed briefs in support of their positions."), ECF No. 82). In his Decision, the Special Master recounted the relevant factual and procedural background, drawing on the medical records from the key period, medical literature, and the parties' expert reports. (*See id.* at 2–12). He ultimately found that Ms. Hiatt had not carried her burden to prove causation. (*Id.* at 26).

Specifically, the Special Master determined that a petitioner alleging that the Tdap vaccine caused GBS must present evidence tied to the components of the Tdap vaccine and must show that the vaccine likely—not merely plausibly—caused the condition. (Entitlement Decision at 24). He determined that the recent publications discussing Tdap-related treatment precautions provided minimal and largely inapposite support, as those precautions concern individuals who previously developed GBS after Tdap, which is not the case here, and the cited materials were

---

[1] GBS is "a rare disorder in which your body's immune system attacks your nerves. Weakness and tingling in your hands and feet are usually the first symptoms. . . ." *Gamboa-Avila v. Sec'y of Health & Hum. Servs.*, 170 Fed. Cl. 441, 443 (2024) (citation omitted).

[2] In her later briefing, Ms. Hiatt narrowed the claim to focus exclusively on the Tdap vaccine. (Entitlement Decision at 1).

[3] *Hiatt v. Sec'y of Health & Hum. Servs.*, No. 19-1363V, 2025 WL 3230494, at *1 (Fed. Cl. Oct. 24, 2025) (docketed at ECF No. 82). For consistency with the parties' briefing, the Court refers to this decision as "Entitlement Decision" and cites to the page numbers of the docketed version.

equivocal. (*Id.*). He likewise rejected the argument that the government had conceded causation, explaining that current federal commentary on the Tdap–GBS pipeline reflects neutrality rather than an affirmative causal acknowledgment. (*Id.* at 24–25). Ultimately, the Special Master found that Ms. Hiatt's causation theory contained too many substantive deficiencies to satisfy the preponderance of the evidence standard. (*Id.* at 26).

## II.    Analysis

Ms. Hiatt seeks review of the Special Master's decision and raises four principal objections. First, she contends that the Special Master erred in his fact-finding with respect to her *Althen* prong-one showing. (Pet'r's Mot. for Review at 6–10 (citing *Althen v. Secretary of Health & Human Services*, 418 F.3d 1274 (Fed. Cir. 2005)). Second, she argues that the Special Master made findings not supported by the evidentiary record, thereby violating her due-process rights. (*Id.* at 10–11). Third, she asserts that the decision improperly required her to present evidence approaching scientific certainty. (*Id.* at 11–13 (citing *Knudsen v. Secretary of Health & Human Services*, 35 F.3d 543, 548–49 (Fed. Cir. 1994)). Finally, she maintains that the Special Master impermissibly heightened her burden of proof by demanding that she "preponderantly establish[] that the Tdap vaccine can cause GBS." (*Id.* at 13–19).

The Secretary responds that Ms. Hiatt's objections lack merit. He first argues that the Special Master applied the correct legal standard, emphasizing that the Vaccine Act and longstanding Federal Circuit precedent make clear that *Althen* prong one requires proof by a preponderance of the evidence. (Sec'y's Resp. at 6, ECF No. 90). He further maintains that the Special Master acted well within his discretion in finding that the government had not conceded a causal association between the Tdap vaccine and GBS, and that this determination was neither arbitrary nor capricious. (*Id.* at 11). The Secretary also disputes Ms. Hiatt's claim that the Special Master demanded scientific certainty, noting that the decision expressly applied the correct, flexible framework. (*Id.* at 13). Finally, he contends that Ms. Hiatt's due-process rights were not violated. (*Id.* at 13–14). For the reasons stated herein, the Court denies Ms. Hiatt's Motion and sustains the Special Master's decision.

### A.  Standard of Review

To obtain compensation under the Vaccine Program, a petitioner must establish either: (1) that they sustained an injury listed on the Vaccine Injury Table ("Table Injury") associated with one of the administered vaccines and occurring within the statutorily defined time frame; or (2) that their condition was caused-in-fact by a vaccine, constituting a "Non-Table Injury." 42 C.F.R. § 100.3; 42 U.S.C. § 300aa-11(c)(1)(C); *see Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006). There is no Table claim for GBS following a tetanus-toxoid–containing vaccine.

Because Ms. Hiatt alleged an unlisted injury, her claim was considered "Non-Table," and she was required to prove causation. To establish causation-in-fact for a Non-Table claim, a petitioner must satisfy the three-part test articulated in *Althen v. Secretary of Health & Human Services*. 418 F.3d 1274. Under *Althen*, the petitioner must show by a preponderance of the evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical

sequence of cause and effect demonstrating that the vaccine caused the injury in this case; and (3) a proximate temporal relationship between the vaccination and the onset of symptoms. *Id.* at 1278. The test is flexible and does not require scientific certainty, but it does require a persuasive showing on all three prongs; failure on any defeats entitlement. *Moberly*, 592 F.3d at 1321; *Bunting v. Sec'y of Health & Hum. Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991).

For both Table and Non-Table claims, the petitioner bears the burden to establish causation by a preponderance of the evidence—a standard that requires more than conjecture or temporal association, but less than scientific certainty. 42 U.S.C. § 300aa-13(a)(1); *Cerrone v. Sec'y of Health & Hum. Servs.*, 146 F.4th 1113, 1120 (Fed. Cir. 2025); *Moberly*, 592 F.3d at 1321. To meet it, the petitioner must present evidence that makes their theory of causation "more likely than not" given the entire record. *See Andreu ex rel. Andreu v. Sec'y of Dep't of Health & Hum. Servs.*, 569 F.3d 1367, 1382 (Fed. Cir. 2009) (holding that "the totality of the evidence— including the striking temporal connection between the vaccine and [petitioner's] initial seizure, the testimony of treating physicians, and the biologic and scientific plausibility of [petitioner's expert's] theory of causation—[was] sufficient to meet the Vaccine Act's preponderant evidence standard"). This burden remains with the petitioner throughout the case, and it is not satisfied by showing that a vaccine could cause the alleged injury in the abstract. *See* RCFC Section 13(a)(1); *W.C. v. Sec'y of Health & Hum. Servs.*, 704 F.3d 1352, 1356 (Fed. Cir. 2013) (citations omitted). Rather, the petitioner must demonstrate causation as applied to their individual circumstances, and that showing must rest on a sound and reliable medical or scientific explanation. *Knudsen*, 35 F.3d at 548.

On a motion for review, the Court applies the arbitrary and capricious standard to factual findings and reviews all legal conclusions de novo. *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). When the Court reviews mixed questions of law and fact, it must determine whether answering it primarily involves legal or factual work. *Nieves v. Sec'y of Health & Hum. Servs.*, 167 Fed. Cl. 422, 428 (2023) (citing *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387 (2018)). It is not this Court's role to reassess the evidence or substitute its own de novo factual determinations. 42 U.S.C. § 300aa-12(e); *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000). Instead, the Court applies a highly deferential standard: it may set aside a Special Master's findings of fact only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Cucuras v. Sec'y of Dep't of Health & Hum. Servs.*, 26 Cl. Ct. 537, 541 (1992), *aff'd*, 993 F.2d 1525 (Fed. Cir. 1993). The Court cannot "substitute its judgment for that of the Special Master merely because it might have reached a different conclusion." *Snyder v. Sec'y of Dep't of Health & Hum. Servs.*, 88 Fed. Cl. 706, 718 (2009). A Special Master's determinations are upheld so long as they are "supported by evidence that is not wholly implausible." *Hibbard v. Sec'y of Health & Hum. Servs.*, 698 F.3d 1355, 1363 (Fed. Cir. 2012) (quoting *Cedillo v. Sec'y of Health & Hum. Servs.*, 617 F.3d 1328, 1338 (Fed. Cir. 2010)).

### B. Objection 2: Due Process Violation

The Court begins by addressing Ms. Hiatt's assertion that the Special Master violated her due process rights. The argument is meritless and fails to engage with the limits of this Court's jurisdiction or the governing standard of review. Ms. Hiatt contends that the Special Master made unrequested factual findings on an issue she did not present, thereby denying her due

4

process. (Pet'r's Mot. for Review at 17–18). This argument principally relates to the Special Master's findings in a prior case and their application here. In *Kaczerowski v. Secretary of Health & Human Services*, the same Special Master considered the same expert, the same body of medical literature, and materially similar arguments. *See* No. 21-758V, 2025 WL 2798865, at *29–38 (Fed. Cl. Spec. Mstr. Aug. 28, 2025). In discussing *Kaczerowski*, the Special Master noted that "the wild-analogs to the Tdap vaccine components have not been shown to be associated with GBS (for example, a tetanus wild bacterial infection)." (Entitlement Decision at 25 (citing 2025 WL 2798865, at *33–34)). Ms. Hiatt argues that this statement is erroneous because she did not advance an argument concerning wild analogs. (Pet'r's Mot. for Review at 10–11).

Ms. Hiatt misrepresents the function of that portion of the decision. The Special Master was not making an independent factual finding about Ms. Hiatt's case; he was summarizing the reasoning and conclusions reached in *Kaczerowski* as part of his broader discussion of how similar causation theories have been evaluated. (Entitlement Decision at 25). The summary necessarily touched on points specific to *Kaczerowski*. The Special Master did not adopt those findings, relying only on the portions relevant here. His reference to wild-analogs was merely descriptive of the prior decision, not a factual finding about Ms. Hiatt.

Providing a summary of a related case is not arbitrary or capricious. While prior decisions are not binding, it is neither unusual nor improper that the Special Master's reasoning in a prior case informed his analysis. *See Davis v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 53, 65 (2010), *aff'd*, 420 F. App'x 973 (Fed. Cir. 2011) ("It is axiomatic that [S]pecial [M]asters in vaccine cases have great leeway in building a record for decision."). Judges and Special Masters routinely draw on their prior evaluations of recurring experts, studies, and theories, particularly when the evidentiary presentations substantially overlap. *See Snyder*, 88 Fed. Cl. at 717 ("[T]his Court has recognized the unique ability of Special Masters to adjudge cases in the light of their own acquired specialized knowledge and expertise."). Doing so promotes consistency and coherence in adjudication, while still requiring each case to be decided on its own record. Far from suggesting a due process concern, reliance on prior understanding reflects the ordinary and legitimate effort to apply consistent reasoning to similar evidence.

Further, accepting Ms. Hiatt's premise *arguendo*, allegations that a judicial officer considered evidence she did not emphasize, misweighed the record, or articulated the governing standards incorrectly do not, without more, amount to a constitutional violation. The Vaccine Act provides a comprehensive and exclusive mechanism for addressing precisely these types of objections: factual findings are reviewed for arbitrariness, and legal conclusions for correctness. *See* 42 U.S.C. § 300aa-12(e). A litigant's disagreement with how a Special Master evaluated the record—or that the Special Master addressed an issue the petitioner did not argue—fits squarely within that statutory review scheme. Due process does not transform routine claims of evidentiary or legal error into constitutional injuries. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (explaining that due process protections are triggered by deprivations of liberty, not by alleged failures in decision-making or protection from harm). Any genuine due-process claim would have to be pursued through the appropriate constitutional channels, not by reframing ordinary disagreements with the Special Master's reasoning as a basis for overturning the decision. Arguments of this sort are not merely unavailing; they impose unnecessary burdens on the Court's limited resources. When parties pursue claims that lack any

legal foundation and fall outside the Court's proper role, they needlessly complicate proceedings and impede the efficient resolution of cases. Within the Vaccine Act's tightly drawn review structure, Ms. Hiatt's due-process theory does not supply a ground for disturbing the judgment.

### C. Objections 1, 3, & 4: Application of Althen Prong One

Ms. Hiatt's remaining objections relate to how the Special Master evaluated the first prong of *Althen*—whether she preponderantly showed a medical theory causally connecting the vaccination and the injury. (Pet'r's Mot. for Review at 6–10 (Objection 1), 11–13 (Objection 3), 13–19 (Objection 4)). "*Althen* makes clear that a claimant's theory of causation must be supported by a 'reputable medical or scientific explanation.'" *Andreu*, 569 F.3d at 1379 (quoting *Althen*, 418 F.3d at 1278). Whether a theory of causation is "reputable" can depend on the scientific evidence. *Id*. at 1380. But medical studies and data "must be viewed . . . not through the lens of the laboratorian, but instead from the vantage point of the Vaccine Act's preponderant evidence standard," which does not require "scientific certainty" or disproving "every possible ground of causation." *Id*. (citation omitted); *see Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010); *Moberly*, 592 F.3d at 1325. Ms. Hiatt was therefore "not required to present proof of causation to the level of scientific certainty," *Moberly*, 592 F.3d at 1324, or to "provide conclusive evidence in the medical literature," *Andreu*, 569 F.3d at 1377. Nor was she required to support her claim with "identification and proof of specific biological mechanisms." *Knudsen*, 35 F.3d at 549. Rather, "causation can be found in vaccine cases based on epidemiological evidence and the clinical picture." *Id*. (citation omitted). It is under this standard that the Court considers Ms. Hiatt's remaining objections.

### i.      The Special Master did not err in his factual findings regarding precautions.

Ms. Hiatt's first objection is that the Special Master's finding that government warnings linking tetanus vaccines to GBS do not apply to her fails both the plausibility and rational-basis standards. (Pet'r's Mot. for Review at 6 (referring to Entitlement Decision at 24)). She argues this conclusion is especially flawed given a recent decision by this Court holding that similar warnings meet those standards. (*Id.*). The Secretary responds that the Special Master carefully weighed the evidentiary record, reached a supportable inference concerning the warnings at issue, and articulated a reasoned basis for his determination. (Sec'y's Resp. at 11–12). The Court finds no error.

To support her theory that tetanus-toxoid–containing vaccines can cause GBS, Ms. Hiatt relied on the expert report of Dr. Carlo Tornatore, neurologist. (Pet'r's Ex. 36, ECF No. 56-1). Dr. Tornatore cited two U.S. Department of Health and Human Services publications: the Advisory Committee on Immunization Practices ("ACIP") *General Best Practice Guidelines for Immunization* and 2018 Center for Disease Control ("CDC") *Morbidity and Mortality Weekly Report*. (Pet'r's Ex. 38, ECF No. 56-3; Pet'r's Ex. 39, ECF No. 56-4). According to Dr. Tornatore, both documents caution against giving a Tdap-related vaccine to anyone who developed GBS within six weeks of a prior tetanus-toxoid dose. (Pet'r's Ex. 36 at 12). Ms. Hiatt characterizes this occurrence as a "challenge-rechallenge," a recurrence pattern that can indicate an exposure is causing an adverse reaction; she maintains that this is sufficient to show that the Tdap vaccine may cause GBS. (Pet'r's Mot. for Review at 8); *see Capizzano*, 440 F.3d 1322 (defining rechallenge). The Special Master rejected this argument. (Entitlement Decision at 23).

Ms. Hiatt's overarching position is that if a tetanus vaccine can cause GBS in others, it is axiomatic that it could cause GBS as a matter of general causation, even if the recipient has not previously had a GBS reaction. (Pet'r's Mot. for Review at 10). She contends that the Special Master disregarded this straightforward principle and that his contrary conclusion necessarily lacks a rational basis. (*Id.*). The Special Master acknowledged that the precaution lends some support to Ms. Hiatt's theory. (*Id.* at 24). Still, he concluded that it was too slight and too unrelated to the circumstances here to be of meaningful help. (*Id.* ("[T]his precaution provides some support for Petitioner's causation theory—but it is ultimately too flimsy and irrelevant to the facts of this case to aid Petitioner all that much.")). This conclusion came after analysis of the Secretary's immunologist expert, Dr. Olajumoke Fadugba's, report. (*Id.* at 9–10). Dr. Fadugba maintained that the precaution regarding administration of Tdap to individuals who previously developed GBS after a tetanus-toxoid–containing dose expressly acknowledged that the evidence of causality—either for or against—was insufficient, and that passive-surveillance data had not suggested otherwise. (*Id.* at 10). Dr. Fadugba further maintained that the precaution did not embody any reliable causal finding but instead represented a conservative advisory based on a handful of case reports and limited to narrow circumstances. (*Id.* at 14).

In further support of her position that common sense indicates Tdap can cause GBS, Ms. Hiatt relies on cases where a special master found, and was affirmed, that evidence of a challenge-rechallenge pattern in other vaccine recipients could constitute proof of general causation under *Althen* prong one. (Pet'r's Mot. for Review at 9–10 (referring to *Mohamad v. Sec'y of Health & Hum. Servs.*, No. 16-1075, 2024 WL 4943421, at *7 (Fed. Cl. Nov. 12, 2024), *appeal dismissed*, No. 2025-1370, 2025 WL 1341189 (Fed. Cir. May 8, 2025)). In *Mohamad*, the Special Master's conclusion that *Althen* prong one was met turned on findings that were expressly tied to the evidentiary record and expert testimony presented in that case. *Mohamad v. Sec'y of Health & Hum. Servs.,* No. 16-1075V, 2022 WL 711604, at *17 (Fed. Cl. Jan. 27, 2022). In the Entitlement Decision for Ms. Hiatt, the Special Master distinguished *Mohamad* by explaining that the holding there rested on what he understood to be the government's effective concession of *Althen* prong one, informed by the manner in which the specific precautions interacted with the case-specific facts and credibility findings. (Entitlement Decision at 23 (citing *Mohamad*, 2022 WL 711604, at *13–15)).

The Court acknowledges that there is a divergence in how the Office of Special Masters evaluates medical evidence concerning an alleged causal relationship between the Tdap vaccine and GBS. *See e.g., K.A. v. Sec'y of Health & Hum. Servs.*, 164 Fed. Cl. 98, 124 (2022) (sustaining SM Corcoran's decision finding no causal relationship), *aff'd*, No. 2023-1315, 2024 WL 2012526 (Fed. Cir. May 7, 2024); *Dennington v. Sec'y of Health & Hum. Servs.*, No. 18-1303V, 2023 WL 2965239 (Fed. Cl. Spec. Mstr. Apr. 17, 2023) (finding no causal relationship) (Corcoran), *mot. for review den'd*, 167 Fed. Cl. 640 (2023), *appeal dismissed*, No. 2024-1214, 2024 WL 1255318 (Fed. Cir. Mar. 25, 2024); *Montgomery v. Sec'y of Health & Hum. Servs.*, No. 15-1037V, 2019 WL 2511352 (Fed. Cl. Spec. Mstr. May 21, 2019) (finding no causal relationship) (Moran); *Rupert v. Sec'y of Health & Hum. Servs.*, No. 10-160V, 2014 WL 785256, at *9 (Fed. Cl. Feb. 3, 2014) (finding no causal relationship) (Dorsey); *Tompkins v. Sec'y of Health & Hum. Servs.*, No. 10-261V, 2013 WL 3498652 (Fed. Cl. Spec. Mstr. June 21, 2013) (finding no causal relationship) (Vowell), *mot. for review den'd*, 117 Fed. Cl. 713 (2014); *but see Winkler v. Sec'y of Health & Hum. Servs.*, 88 F.4th 958, 967 n.3 (Fed. Cir. 2023) (affirming SM Dorsey's assumption that petitioner provided a "'proven a sound and reliable causal mechanism'

linking . . . receipt of the Tdap vaccine to the development of GBS so as to satisfy *Althen* prong one."); *Harris v. Sec'y of Health & Hum. Servs.*, No. 18-944V, 2023 WL 2583393, at *23 (Fed. Cl. Feb. 21, 2023) (finding a causal relationship) (Horner); *Mohamad*, 2022 WL 711604, at *17 (Fed. Cl. Jan. 27, 2022) (finding a causal relationship) (Moran), *review denied, decision aff'd*, No. 16-1075, 2024 WL 4943421 (Fed. Cl. Nov. 12, 2024); *Swaiss v. Sec'y of Health & Hum. Servs.*, No. 15-286V, 2019 WL 6520791, at *27 (Fed. Cl. Nov. 4, 2019) (finding causal relationship) (Gowen). Some decisions have found that petitioners met their burden under *Althen* based on the particular expert testimony and record presented, while others, often on materially different records, have concluded that the evidence was insufficient to establish causation. (Entitlement Decision at 18). The Special Master acknowledged this rift in his Entitlement Decision. (*Id.* at 22).

The existence of differing outcomes does not signal a recognized causal association between Tdap and GBS, nor does it create a binding precedent that would compel a Special Master to reach a particular conclusion in any given case. *See Boatmon v. Sec'y of Health & Hum. Servs.*, 941 F.3d 1351, 1358 (Fed. Cir. 2019) ("[a] Special Master is not bound to follow the opinions of other Special Masters."). This variation reflects the fact-specific nature of Vaccine Act adjudication, not a settled legal or scientific consensus in either direction. Special Masters are charged with weighing the evidence before them, assessing the credibility of competing experts, and applying the *Althen* framework to the unique factual record of each petition. *Snyder*, 88 Fed. Cl. at 717. That some Special Masters have found causation on certain records while others have not underscores that these determinations turn on the strength and coherence of the evidence presented, not on any uniform view within the Office of Special Masters about Tdap and GBS. *Knudsen*, 35 F.3d at 548 ("[c]ausation in fact under the Vaccine Act is . . . based on the circumstances of the particular case."); (*see* Entitlement Decision at 22).

Ms. Hiatt also notes in her Motion for Review that *Mohamad* was later sustained by another judge of this Court. (Pet'r's Mot. for Review at 9–10 (citing *Mohamad*, 2024 WL 4943421, at *9 (Hadji, J.))). Ms. Hiatt emphasizes that this affirmance went unmentioned in the Entitlement Decision, a silence she believes understates the significance of the case.[4] (*Id.* at 10). This Court affirmed that evidence of the "rechallenge" paradigm in other vaccine recipients can constitute proof of general causation under *Althen* prong one. *Mohamad*, 2024 WL 4943421, at *9 n.10. That ruling merely illustrates why the Special Master's analysis was not arbitrary or capricious—it does not establish that the challenge-rechallenge paradigm is itself a legally required or sufficient showing under *Althen*. Stated differently, the fact that such evidence *can* satisfy an evidentiary burden does not mean that it invariably *does*. The arbitrary-and-capricious standard lives a double life; it necessarily allows for divergent but reasonable outcomes. The question is not whether another decision might also have been reasonable, but whether the one reached is within the bounds of rational decision-making. Provided the Special Master has

---

[4] As a general rule, the Special Master was not required to discuss that case as it constitutes non-binding precedent. *Boatmon v. Sec'y of Health & Hum. Servs.*, 941 F.3d 1351, 1358 (Fed. Cir. 2019); *see also Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998), ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims[.]") *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999).

considered the evidence and articulated a rational basis for his conclusions, the mere possibility that another adjudicator might have decided the matter differently does not render the decision unlawful. *See Hines ex rel. Sevier v. Sec'y of Dep't of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991) ("If the [S]pecial [M]aster has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate."). Although *Mohamad* was sustained, that outcome does not determine whether Ms. Hiatt has met her burden, and its affirmance does not justify remand or reversal.

That the Department of Health and Human Services issued precautions that apply only to individuals who previously developed GBS after a tetanus-toxoid dose was a central aspect of the Special Master's reasoning. (*See* Entitlement Decision at 24). The Secretary argued that, despite the government publications, the warnings from the ACIP and CDC could not advance Ms. Hiatt's *Althen* prong-one theory because she had no history of GBS following an earlier tetanus-containing vaccination. (Sec'y's Resp. at 12). Accepting that argument, the Special Master captured the point succinctly: the precaution "was inapplicable to Ms. Hiatt, who had not been shown to have previously experienced post-Tdap vaccine GBS." (Entitlement Decision at 14). In examining cases where a causal relationship was found, the Special Master found those decisions distinguishable because they involved either effective concessions on *Althen* prong one or case-specific credibility assessments that are absent here. (*Id.* at 24). Although the precautions reasonably lend support to Ms. Hiatt's position that Tdap may, in some circumstances, be associated with GBS, a precaution remains just that—a conservative measure rather than an admission of causation. The Special Master's conclusion that these warnings do not establish that Tdap can cause GBS, particularly when evaluated against the record, reflects a reasoned assessment of their limited probative value and therefore cannot be deemed arbitrary.

ii.    The Special Master did not require proof of scientific certainty.

The Court is also not persuaded by Ms. Hiatt's claim that the Special Master required proof of scientific certainty in contravention of legal precedent. Ms. Hiatt argues that the Special Master's findings demonstrate that he applied an improperly heightened burden of proof. (Pet'r's Mot. for Review at 10–11 (referring to statements that "epitope similarity was too nonspecific," that there was "no evidence that Petitioner possessed cross-reactive antibodies," and that there was no "epidemiologic evidence") (citing Entitlement Decision at 6, 11))). According to Ms. Hiatt, these expectations collectively amount to a requirement of near-definitive mechanistic proof, far beyond what the preponderance of the evidence standard requires. (*Id.* at 11).

The Secretary contends, and the Court agrees, that although Ms. Hiatt frames her objection as a legal challenge, it amounts to a disagreement with the Special Master's weighing of the expert evidence and a misunderstanding of his findings. (Sec'y's Resp. at 13). The passages on which Ms. Hiatt relies are not findings or legal conclusions at all; they are summaries of the expert reports. Section II of the Decision serves only to recount the parties' submissions, not to resolve them. (Entitlement Decision at 3–12). When a decision simply recounts the contents of an expert report without adopting or analyzing its conclusions, that recitation functions as dicta rather than a finding of fact. *See Obiter Dictum*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may

be considered persuasive).”); *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n.*, 357 F.3d 1294, 1307 (Fed. Cir. 2004) (“Because statements made in dicta do not implicate the substantive holding of the case, they cannot be considered binding authority.”) (internal quotations omitted). Treating those summaries as if they reflected the Special Master's own determinations misapprehends the structure of the Decision and obscures the actual findings that appear later in the analysis. Because Ms. Hiatt's argument is premised on a misreading of the Special Master's findings, it is unavailing.

To the extent Ms. Hiatt invites the Court to reweigh the evidence, that invitation must be declined. *See Lampe*, 219 F.3d at 1360. While the Special Master “must review record evidence to assess the preponderance standard,” he is “at liberty to determine the weight of each piece of evidence.” *Faulkenberry v. Sec'y of Health and Human Servs.*, 176 Fed. Cl. 700, 707 (2025) (citations omitted). That said, a causation theory must only be “legally probable, not medically or scientifically certain.” *Knudsen*, 35 F.3d at 549. A review of the Entitlement Decision confirms that the Special Master did not demand scientific certainty or impose an unduly rigorous burden of proof. Instead, he evaluated the evidence Ms. Hiatt submitted and found it insufficient under the preponderance standard. His observations regarding epitope similarity, cross-reactive antibodies, and epidemiologic data, (Entitlement Decision at 6, 11), reflected an assessment of the strength of Ms. Hiatt's theory, not the imposition of inflexible legal prerequisites. Based on the record, the Special Master reasonably determined that Ms. Hiatt had not met her burden under *Althen* without requiring definitive scientific proof of causation.

### iii.    The Special Master did not heighten the burden of proof.

Finally, Ms. Hiatt contends that the Special Master improperly elevated the standard under *Althen* prong one by requiring not merely a “reputable” medical theory, but affirmative proof that the vaccine can cause the alleged injury. (Pet'r's Mot. for Review at 13). Ms. Hiatt states that this approach effectively disregards the long-recognized principle that a petitioner may satisfy prong one by presenting a biologically plausible theory, proven by a preponderance of the evidence. (*Id.* at 13–14). She argues that the standard applied exceeds what is legally required and imposes a burden unattainable under current scientific understanding. (*Id.* at 14). The Secretary reasons that the Special Master applied the correct preponderance standard. (Sec'y's Resp. at 6). The Court finds that while a biologically plausible theory is a necessary component of a petitioner's case, it must be substantiated by reliable evidence that, taken as a whole, establishes causation by a preponderance of the evidence; the Special Master did not misapply this standard.

Ms. Hiatt appears to treat the biologically plausible medical theory and the preponderance of the evidence standard as distinct and independent requirements. They are not. In vaccine injury cases, the preponderance of the evidence standard and the requirement of a biologically plausible medical theory under *Althen* prong one work together to define both the nature and degree of proof a petitioner must provide to establish causation. *See* 42 U.S.C. § 300aa13(a)(1); *Althen*, 418 F.3d at 1280. The biologically plausible theory sets the framework: it must offer a scientifically credible explanation for how the vaccine could cause the alleged injury. *Knudsen*, 35 F.3d at 549. This theory need not be universally accepted or proven to a scientific certainty; rather, it must be grounded in reliable medical or scientific principles and rise above mere speculation. *Id.* Once such a theory is articulated, the petitioner must then prove

10

it by a preponderance of the evidence—that is, show it is more likely than not that the vaccine caused the injury. *White v. Sec'y of Health & Hum. Servs.,* ___ F. 4th. ___, 2025 WL 3703259, at *4 (Fed. Cir. Aug. 27, 2025) (citing *Lobo v. Dep't of Just.,* 139 F.4th 1311, 1317 (Fed. Cir. 2025) (noting that "'medical certainty' . . . is more demanding than the preponderance standard of more likely than not")). This evidentiary standard allows for flexibility, recognizing that direct proof is often unavailable in complex medical cases. *Althen,* 418 F.3d at 1279. Circumstantial evidence, expert opinion, and logical inference may suffice. *Id.* at 1280. Together, these standards ensure that petitioners are not held to an unattainable scientific threshold, while still requiring a rational and persuasive showing of causation based on the specific facts of the case. Put simply, plausibility must be proven by a preponderance of the evidence.

Ms. Hiatt correctly observes that *Althen* prong one is satisfied by presenting a biologically plausible medical theory, so long as that theory is supported by reliable evidence, which may include circumstantial proof. (Pet'r's Mot. for Review at 14). She argues that the Special Master departed from this standard by effectively requiring her to demonstrate that the Tdap vaccine actually "can cause" GBS, a level of proof she describes as scientifically unattainable. (*Id.*). Notably, however, Ms. Hiatt herself characterizes *Althen* prong one in nearly identical terms earlier in her Motion for Review, stating that prong one "asks a Petitioner to show that a vaccine *can cause*, (general causation), an injury." (*Id.* at 10 (emphasis in original)). In the end, it is difficult to discern any meaningful distinction between the standard Ms. Hiatt advocates and the one she criticizes the Special Master for applying.

In addressing the evidentiary standard under the first *Althen* prong, the Federal Circuit has repeatedly made clear that it is not enough for a petitioner to present a causation theory that is merely scientifically or medically plausible. *See Cerrone,* 146 F.4th at 1121 (rejecting the notion that plausibility alone satisfies prong one); *Kalajdzic v. Sec'y of Health & Hum. Servs.,* No. 2023-1321, 2024 WL 3064398, at *2 (Fed. Cir. June 20, 2024) (reaffirming that arguments advocating "a less than preponderance standard" are "plainly inconsistent with [Circuit] precedent" (citing *Moberly,* 592 F.3d at 1322)); *Boatmon,* 941 F.3d at 1359 (emphasizing that plausibility must be supported by reliable evidence). While a petitioner must present a biologically plausible medical theory explaining how the vaccine could cause the alleged injury, that theory must also be supported by evidence sufficient to meet the preponderance of the evidence standard. *Knudsen,* 35 F.3d at 548–49 (the standard of proof for causation under the Vaccine Act is "probable" and "preponderance").

Despite Ms. Hiatt's assertions, a theory alone is insufficient to satisfy the burden under *Althen* prong one. (Pet'r's Mot. for Review at 15–16). The theory is the starting point, as it defines *what* the petitioner is trying to prove. But the petitioner must also provide some support that the theory is plausible in the context of the case. Assessment of that theory "is made through the standards of the Vaccine Act's preponderance evidence test, not through the standards of rigorous medical research[.]" *Doles v. Sec'y of Health & Hum. Servs.,* No. 2023-2404, 2025 WL 1177875, at *3 (Fed. Cir. Apr. 23, 2025) (citing *Andreu,* 569 F.3d at 1380). The Special Master then evaluates the quality, reliability, and coherence of that evidence. *Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (noting that a special master has discretion to determine the relative weight of the evidence, including medical records). Thus, a theory without some level of satisfactory evidentiary support is insufficient. The petitioner must bridge the gap between theory and proof with persuasive evidence tailored to the facts of the case. *Exum v.*

11

*Sec'y of Health & Hum. Servs.*, 178 Fed. Cl. 627, 650 (2025) (affirming Special Master's requirement that the petitioner must "knit[ ] together . . . an overall theory that does not amount to speculation or unreasonable extrapolation."). As the Federal Circuit recently affirmed, "the evidence a claimant offers must, in totality, always accomplish one thing in the end: preponderantly establish that the vaccine(s) at issue more likely than not can cause the relevant disease." *Cerrone*, 146 F.4th at 112 (emphasis removed). In Ms. Hiatt's case, the Special Master correctly identified and applied the governing standard. It appears that Ms. Hiatt's objections on this point relate to the weight assigned to the evidence she presented, rather than the legal framework employed by the Special Master. The Court has already found that his findings were rational.

As part of her argument, Ms. Hiatt contends that the Federal Circuit itself has misapplied the *Althen* prong one standard in recent years. (Pet'r's Mot. for Review at 18 (referring to *Boatmon*, 941 F.3d 1351 and *Cerrone*, 146 F.4th 1113 as "aberrant" to *Althen*)). She asserts that these decisions have impermissibly elevated a petitioner's burden by requiring definitive proof of causation, rather than a reliable and biologically plausible theory supported by a preponderance of the evidence. (*Id.*). In her view, this trend reflects a departure from the flexible evidentiary framework that *Althen* was intended to preserve. (*Id.*). Whether Ms. Hiatt believes the Federal Circuit has veered off course from *Althen* is ultimately a matter for her to raise with that court. This Court is bound to follow the route the Circuit charts. If a course correction is warranted, it is the Circuit—not this Court—that holds the map and the wheel.

Viewed through the deferential lens required by the Vaccine Act, Ms. Hiatt's objections do not warrant disturbing the Special Master's decision. Her challenges to his fact-finding amount to disagreements with how the evidence was weighed, not demonstrations that the findings were improper. The record reflects a careful and transparent evaluation of the medical records, expert reports, and competing theories. Nothing in Ms. Hiatt's submissions identifies a factual determination that approaches arbitrariness or caprice or a misapplication of the governing legal standards. The decision does not suggest that the Special Master required scientific certainty or otherwise heightened Ms. Hiatt's burden; he applied the *Althen* framework and the preponderance standard as precedent requires. Because the Court's role is limited to ensuring that the Special Master acted rationally and within the bounds of law, the decision must be sustained.[5]

---

[5] Ms. Hiatt requests that the Court remand this matter with instructions that it be reassigned to Special Master Young. (Pet'r's Mot. for Review at 20). Even assuming Ms. Hiatt had prevailed on the merits, she has not established good cause to justify reassignment. The record lacks any indication of bias, misconduct, or other exceptional circumstances that would warrant removal of the Special Master. Moreover, the Court is guided by the well-established principle that litigants do not have the right to choose their adjudicator.

### III.    Conclusion

Framed against the proper standard of review, Ms. Hiatt's objections fall short, and the record provides no basis to disturb the Special Master's well-supported decision. Because she has identified no legal error and no improper factual determination that meets the threshold for reversal, the Court **DENIES** her Motion for Review, (ECF No. 89), and **SUSTAINS** the Special Master's decision, (ECF No. 82). The Clerk is directed to enter judgment accordingly.

The Court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which the parties agree. Per Vaccine Rule 18(b), **fourteen (14) days** from the date of this decision, the parties shall file a Joint Status Report indicating their agreement with the proposed redactions, attaching a copy of those pages of the Court's ruling containing proposed redactions, with all proposed redactions clearly indicated.

**IT IS SO ORDERED.**



s/    David A. Tapp

DAVID A. TAPP, Judge